PHINEAS JANNEY *vs.* WILLIAM O. SPRIGG, ADMINISTRATOR D. B. N., C. T. A. OF SARAH LAMAR.—*December* 1848.

A testatrix devised and bequeathed all her real and personal estate to her niece, *M T*. The will then proceeds: "should my said niece die leaving children, all the real and personal estate, hereinbefore devised and bequeathed to her, shall vest in such child or children absolutely and in fee

simple, provided such child or children should attain the age of twenty-one years, or previously marry, but should my said niece die *unmarried and without leaving children,* and should she die leaving children, and such child or children die before the age of twenty-one years, *or* without having married previous to the attainment of such age," then over to her other nephews and nieces. HELD:

That to effectuate the general intent of the testatrix, the word *"and,"* between the word "unmarried," and the words "without leaving children," must be construed *"or,"* and the word *"or,"* between "years," and "without," must be construed *"and."*

This conversion of *"and"* into *"or,"* and of *"or"* into *"and,"* will be made to effectuate the clear intent as apparent upon the whole will, either for the benefit of the first devisee and his issue, or for the benefit of the ulterior devisee.

The clear intention of this testatrix was, that her estate devised, should first vest in her niece, *M T,* and in the event of her leaving a child or children, it should vest in such child or children in fee simple, provided they attained the age of twenty-one years or previously married; and in the event of *M T's* death without children, the estate should pass under the limitation, over to her other nephews and nieces.

The estate being limited over, after the death of the niece, to her children in fee, and then contingently over to the ultimate devisees, so that the children taking no part of the realty, by inheritance, from their mother, but holding under the will as purchasers, *per formam doni,* the husband of the niece could, upon no possible contingency, become a tenant by the curtesy thereof.

APPEAL from *Allegany* county court.

On the 16th of June 1846, the appellee, as administrator *d. b. n., c. t. a.* of *Sarah Lamar,* deceased, instituted an action of *replevin* in *Allegany* county court, against the appellant, to recover a certain negro slave, named *Ellen,* and her two children, described in the writ. The defendant pleaded property in himself. At the trial, the plaintiff to support the issue on his part, offered in evidence the last will and testament of *Sarah Lamar,* deceased, executed on the 18th of March 1839, and admitted to probate on the 23rd of October 1839; whereby, after payment of debts and funeral charges, she devises and bequeaths as follows: "I give and bequeath unto my kind and faithful domestic and friend, *Ruth Barker,* the annual sum of $30, during her life. It is my wish, if my executor should approve of it, that in order to raise this annuity, the sum of $500 be loaned out upon good security, or invested in good

bank stock, and that the interest or dividend thereon be appropriated to the said *Ruth*, in such a manner that she may draw the same in her own name; and at the death of the said *Ruth*, said principal sum is to be subject to the dispositions hereinafter made of my estate; but should this arrangement not be made, she is to be paid the said sum of $30 by my executor, in the month of April every year."

"*Item*.—It is my will and desire, that if my executor should think it most advisable, he may sell and dispose of my negro woman, *Ellen*, and her children, the said negro woman is to have the privilege of choosing her own master. It is my wish, that the mother and children may not be parted, but should my niece, *Mary Tilghman*, wish to retain, for her own use, one or more of said *Ellen's* children, she is to have the privilege of doing so. The money arising from the sale of said negro woman and children, is to be disposed of as hereinafter provided."

"*Item*.—It is also my will and desire, that all the household goods and furniture which I may leave at my death, be sold by my executor, excepting such articles as my said niece, *Mary*, may wish to retain for her own use, and the proceeds be also disposed of as hereinafter provided."

"*Item*.—I give, devise and bequeath unto my beloved niece, *Mary Tilghman*, all my real estate, wherever the same may lie or be situated, and also all my personal estate, of every description. It is my will, that the money which I may leave at my death, (subject to the provision above made in favor of *Ruth Barker*,) together with such addition thereto as may be made by the sales above directed, and from other sources, shall be loaned out at legal interest, upon good security, or invested in good bank or other stocks by my executor, and that the interest or dividends annually accruing thereon, be paid over to my said niece, for her sole use and benefit. Should my said niece marry, and die leaving children, it is my will and desire, that all the real and personal estate hereinbefore devised and bequeathed to her, shall vest in such child or children, absolutely and in fee simple, provided such child or children should attain the age of twenty-one years or previously marry.

But should my said niece die unmarried and without leaving children, or should she die leaving children, and such child or children die before the age of twenty-one years, or without having married previous to the attainment of such age, then I further devise and bequeath all said real and personal estate as follows: First, I give and bequeath unto my favorite nephew, *William O. Sprigg*, the sum of $1000. The residue of my personal estate, if any, and my real estate, are then to be divided equally, share and share alike, amongst the children then living of my sister, *Mary Sprigg*, my brother, *William Lamar*, and *Margaret*, daughter of my sister, *Louisa Tilghman*, should she be alive. With a view to this division, my real estate is to be sold by a trustee, to be appointed by *Allegany* county court, and the proceeds of sale, together with the residue of the personal estate, if any, are to be distributed, under the supervision of said court, amongst those entitled to receive the same, as provided above; and lastly, I do hereby constitute and appoint *Michael C. Sprigg* to be sole executor of this my last will and testament, hereby revoking," &c. It was then admitted, that the three negro slaves claimed in this suit, are the same mentioned in said will. That *Mary Tilghman*, named in said will, was an infant orphan at the time it was made; that afterwards, on the 10th of December 1844, she intermarried with the defendant, and in November 1845, died, leaving the defendant, her surviving husband. That she died without leaving children, and never had a child. That *Michael C. Sprigg*, named as the executor of said will, duly qualified as such, and was also duly appointed guardian to the said *Mary Tilghman*.

The defendant then offered in evidence the administration account book of said county, which showed, that *Michael C. Sprigg* made a final settlement of his executorship, under said will, on the 9th of November 1841; also the guardian account book, showing that *Michael C. Sprigg*, as guardian of *Mary Tilghman*, accounted for the hire of said three negroes, as guardian of said *Mary*. The defendant then proved, that the said *Michael C. Sprigg* delivered the said three negroes to defendant, soon after his intermarriage with said *Mary*, and

that he retained the same until this *replevin* issued. Whereupon the defendant prayed the following instruction to the jury:

That upon the evidence offered, and by the will of *Sarah Lamar*, *Mary Tilghman* took the absolute title in the property bequeathed to her, and that the same did not pass over, by the construction of the will, to *William O. Sprigg* and others, and that on the death of the said *Mary Tilghman* without leaving children, the right to the property become vested in *Phineas Janney*, the defendant, which instruction the court refused to give, and the defendant excepted, and the verdict and judgment being for the plaintiff, the defendant appealed to this court.

The cause was argued before Dorsey, C. J., Spence and Frick, J.

By T. Perry and Price for the appellant, and
By McKaig and Roman for the appellee.

Dorsey, C. J., delivered the opinion of this court.

There is but one question for our determination in this case, and that arises on the construction of the last will and testament of *Sarah Lamar*.

By which, after giving an annuity of thirty dollars a year to another person for life, the testatrix devises and bequeaths to her beloved niece, *Mary Tilghman*, all her real and personal estate of every description; and after directing her executor to convert all her personal estate into money, and to lend out the same at interest on good security, or invest it in good bank or other stocks, she directed the interest or dividends annually accruing thereon, to be paid over to her said niece for her sole use and benefit. The will then proceeds as follows: "Should my said niece, *Mary*, die, leaving children, it is my will and desire, that all the real and personal estate hereinbefore devised and bequeathed to her, shall vest in such child or children, absolutely and in fee-simple; provided such child or children should attain the age of twenty-one years, or previously marry; but should my said niece die unmarried and without leaving

children, or should she die leaving children, and such child or children die before the age of twenty-one years, or without having married previous to the attainment of such age, then I further devise all said real and personal estate as follows:— *First,* I give and bequeath unto my favorite nephew, *William O. Sprigg,*" &c., and others, her nephews and nieces, absolutely or in fee. *Mary Tilghman* intermarried with the appellant and died, never having had a child or children. The only question argued before this court, and on which its opinion was required, was, whether the word "and," between the word "unmarried," and the words, "without leaving children," was to be construed disjunctively, as if it had been "or." It was conceded in the argument, that the word, "unmarried," meant never having been married, and that children, meant the offspring of lawful wedlock.

In 2 *Wms. on Ex'rs,* 715, the author in giving the general rules for the construction of wills, states, as his 5th rule, "that the will must be most favorably and benignly expounded, to pursue, if possible, the intention of the testator. To effectuate, therefore, the clear intention as apparent upon the whole will, words and limitations may be transposed, supplied or rejected. But the rule is, that words in a will are not to be rejected, unless there cannot be any rational construction of the words as they stand. So, in order to advance the apparent intention of the testator, 'or' may be construed, 'and,' and *vice versa,* in cases of legacies as well as devises of real estate. So 'if,' may be construed, 'when,' for the same purpose." For all which numerous authorities are cited; but for the establishment of principles so familiar, it is deemed unnecessary to refer to them.

In 6 *Johns.,* 54, *Jackson vs. Blansham,* one of the authorities relied on by the appellant, where "or" was construed to mean "and," by *Kent, Chief Justice;* who after a full examination of all the authorities upon the subject, "quoted with approbation the rule, that in deeds and wills, the words, 'or' and 'and,' are not to be always held to a strict grammatical sense, but 'or,' is to be taken for 'and,' and 'and' is to be taken for 'or,' as may best comport with the intent and meaning of the grant or devise."

Numerous decisions have been adduced to show, that where a testator has devised property in fee with a limitation over, in case of the death of the first devisee, "under twenty-one or without issue," or of his dying "under twenty-one, unmarried or without issue," the word "or" is to be interpreted as if it were "and." The principle thus asserted, is now so well established, that it is unnecessary to enumerate the cases on which it depends, or in that respect to make any comment upon them. The conversion of "or" into "and," or of "and" into "or," say the appellant's counsel, is never to be made, in the construction of last wills and testaments, unless it be for the benefit of the first devisee or his issue, it is not to be allowed in any case for the benefit of the ulterior devisee. For this broadly asserted proposition, so materially qualifying or changing the general rule, heretofore so universally recognized upon the subject, no decision of any court, or even *dictum* of a judge, has been produced.

In *Hepworth vs. Taylor*, 1 Cox, 112, a "bequest over, in case the legatee died unmarried, *and* without issue, was held to take effect on the death of one married, but without leaving issue." This decision could have been made upon no other principle than by construing "and," as if it had been "or." As had "and" been construed copulatively, nothing but the first legatee's death, without ever having been married, could have given effect to the limitation over.

*Wilson vs. Bayley*, 3 *Brown, C. R.*, ( *Tomlins' edition,*) 454, the word "and" was interpreted as "or," to give effect to the limitations over.

The case of *Maberly vs. Strode*, 3 *Ves.*, 450, is, for the most part, in the very words of the case now before this court. The limitation over, after an absolute estate to the son, of all the testator's real and personal estate, (which was to be sold and invested in government and real securities,) was as follows: "but in case my said son shall die *unmarried and without issue*, or having issue, they shall all die before he, she, or they, if a son or sons, shall attain the age of twenty-one years, respectively, or if a daughter or daughters, shall attain the age of twenty-one years, or be married, respectively," then over to the ulterior legatees.

In this case *Lord Alvanly* decided, that "and" should mean "or," between the word "unmarried" and the words "without issue."

*Ball vs. Phyn*, 7 *Ves.*, 453, is also a very strong authority for interpreting the word "and" as "or," in the will now before us. The limitation there, was, in case of the death of the first devisee, "without being married, and having children," then over: *Sir William Grant*, the master of the rolls, by whom the case was decided, says, "indeed the contingency of dying unmarried and without children, cannot properly be said to mean any thing more than the latter event, as legally speaking, there can be no children without a marriage. And therefore, to give effect to all the words, it is necessary to construe the copulative as disjunctive." The result of the decisions in the three preceding cases was to give effect to the limitations over.

But, say the counsel for the appellant, the cases of *Maberly vs. Strode*, and *Bell vs. Phyn*, are no longer regarded as of any authority, and to prove this, they, in the first place, have referred to 2 *Wms. on Ex'rs*, 715, *note (i.,)* where, after the author of that valuable work had stated the decisions in these two cases, without questioning their correctness or authority, the annotator to that work, by the note referred to says, "*Maberly vs. Strode*, 3 *Ves.*, 450 ; *Bell vs. Phyn*, 7 *Ves.*, 459. This construction was refused in *Doe vs. Cooke*, 7 *East.*, 269; *Doe vs. Rawlings*, 2 *Barn. & Ald.*, 441 ; *Girdlestone vs. Doe*, 2 *Sim.*, 225.

This note, the appellant's counsel rely on, as shewing that these two cases, the one in the 3*d*, and the other in 7*th Ves.*, have been overruled, or are inconsistent with the subsequent authorities referred to in the note. After examining these authorities, it is hardly fair to adopt the appellant's construction of this note, and yet it is difficult to discover what other interpretation could well be given to it. The first of the annotator's three cases, read to us, in which he tells us the court refused to change "and" into "or," contrary to the decisions of *Maberly vs. Strode*, and *Bell vs Phyn*, is that of *Doe vs. Rawlings*, 2 *Barn. & Ald.*, 441, where the devise was to the daughter in

fee, with a limitation over, if she "shall die under the age of twenty-one years, unmarried and without lawful issue." The court did in this case refuse to interpret the word "and" between "unmarried," and the words "without lawful issue," as "or;" but why? because by such a construction, had the daughter died under the age of twenty-one years, leaving issue, such issue could have taken nothing under the devise to the daughter, and the whole estate would have passed under the limitation over, contrary to the clear intent of the testator, and in opposition to all the adjudications upon the subject, as well in *Maryland* as elsewhere. Nay, so far from the court's changing "and" into "or," had the word "or" instead of "and" been that which was contained in the devise, the court would, without a moments hesitation, at the present day, have declared that it must be construed conjunctively, that it meant "and."

The second case read to us, referred to in the note in *Wms. on Ex'rs*, is that of *Doe vs. Cooke*, 7 *East.*, 269, and all that has been said in reference to the question now under consideration, of the case in 2 *Barn. & Ald.*, applies with equal force to the case in 7 *East.*

The third case referred to by the annotator, is that of *Girdlestone vs. Doe*, 2 *Simons*, 225, where it is impliedly asserted in the note, that the court refused to construe the word "and" as if it had been "or." No such question arose in that case, no such refusal was made by the court. The effort there was to interpret "or" as meaning "and," which was not sustained by the court; the vice chancellor stating: "It appears to me, that 'or' must be construed disjunctively here, as the context required it."

The note cited from 2 *Wms. on Ex'rs*, can, for the reasons stated, give no aid to the appellant's assertion, that the cases of *Maberly vs. Strode*, and *Bell vs. Phyn*, are no longer regarded as of any authority. But this assertion was urged by the appellants as fully sustained by the opinions of *Lord Brougham*, in the case of *Dillon vs. Harris*, 4 *Bligh*, *N. S.*, 329, so far from *Lord Brougham* designing to overrule the case of *Maberly vs. Strode*, if we are to collect his meaning

from what he has said, he clearly acknowledged the authority of that case, and argued upon its facts, to prove the correctness of its decision. In pages 359 & 360 of 4 *Bligh*, he says: "Much stress has been laid upon the authorities of *Maberly vs. Strode*, and *Bell vs. Phyn*. But in *Maberly vs. Strode*, there was a third clause, which almost imposed on the court a necessity of changing the word, to give a reasonable construction. The limitation over, was, in case the son of the testator should die unmarried, and without, or having issue, they should all die before attaining the age of twenty-one years, or marriage. It was to accomplish the general intent of the testator, which was apparent in this case from the superadded provision of the will, that the word 'and' was construed disjunctively. As to *Bell vs. Phyn, Sir W. Gant*, referring to the case of *Maberly vs. Strode*, does not take notice of the circumstances to which I have adverted, of the superadded clause in that case, and he held that the word 'and' must be construed 'or,' probably upon the ground, that the case, upon the general intention of the testator, to be collected from the provisions of the will, required such change to give a reasonable construction. But the doctrine is not to be applied to a case, where the intent of the testator would be frustrated, not advanced, by such a charge."

And in his lordship's subsequent remarks on the final decision of the appeal in the House of Lords, in commenting on the case of *Maberly vs. Strode*, as affecting the case then under consideration, he clearly shows, that it was not his intention to deny its authority, but its application, to the case which he was then deciding, In page 365 of 4 *Bligh*, he states: "It is said that in this case, the word "and" should be construed 'or;' and that is contended on the authority of two cases, *Maberly vs. Strode*, and *Bell vs. Phyn*, the one determined by *Lord Alvanly*, and the other by *Sir William Gant*, and which are connected together, inasmuch as in *Bell vs. Phyn*, a reference was made to *Maberly vs. Strode*. Reliance being placed upon those two cases, when you come to look into them, they do not bear out the proposition of reading 'and' in the disjunctive, as 'or,' where it will tend to frustrate and not to

further the general intent, which would be the effect here. In that case, there was a third clause in the devise, which showed that the testator contemplated the having issue, and the decease of that issue under age.''

From these extracts from the opinion of the lord chancellor, who delivered the opinion adopted by the House of Lords, in *Dillon vs. Harris,* 4 *Bligh,* 321, it is manifest, that in the decision there made, there was no design to overrule or impair the authority of *Maberly vs. Strode,* on the contrary, its authority was fully recognized. If such recognition be sustained by this court, the correctness of the county court's decision in the case before us, admits of no question.

It is believed, on an attentive perusal of the will of *Sarah Lamar,* every sound, unprejudiced and discriminating mind will be led to the conclusion, that it was the intention of the testratrix, that her estate devised should first vest in her niece, *Mary Tilghman,* and in the event of her leaving a child or children, that her estate should vest in such child or children in fee-simple, provided they attained the age of twenty-one years, or previously married; and that in the event of *Mary Tilghman's* death, without leaving any such child or children, that the estate should pass under the limitation over to her nephews and nieces, as provided for by the will. That such was the general intent of the testatrix, appears upon the face of the will. *Mary Tilghman* and her children were the first objects of the testatrix's bounty, and for whom she especially designed to make provision by her will. The secondary objects of her bounty were her nephews and nieces, to whom she limited over her estate in the event of *Mary Tilghman's* death, without leaving children, who might arrive to the age of twenty-one years, or previously marry. Upon failure of the primary objects of her bounty, she intended her estate should pass to those, who, by the terms of her will, she had shewn to be the secondary objects of her bounty.

For those classes, only, did she evince by her will, any disposition to make a provision. That any portion of her estate in the event of *Mary Tilghman's* marriage, should vest in her husband, it is manifest, was contrary to the intention of the

testatrix, who appears sedulously to have endeavoured to guard against it.

Her personal estate, that it might, undiminished, reach the hands of the ulterior objects of her bounty, she directs the executor to lend out at interest, or invest in stocks, and that "the interest or dividends annually accruing thereon, be paid over to my said niece for her sole use and benefit." Thus evincing a manifest design, that not even the income of the personal estate given to her niece, should be permitted to pass into the hands of her husband. And the testatrix has with equal success, and from design, it must be presumed, so disposed of her real estate, that the husband of her niece should, upon no possible contingency, become, thereof, a tenant by the courtesy. She has limited the estate over after the death of the niece to her children in fee, and then contingently over to the ultimate devisees, so that the children taking no part of the realty by inheritance from their mother, but holding under the will as purchasers *per formam doni*, the husband could possess no title as tenant by the courtesy. But what is the right now asserted by the husband, the appellant, as resulting from the true intention of the testatrix, to be collected from the face of the will? It is, that by his marriage with the niece, and her death without children, that all the limitations over in the will are defeated, and that the entire personalty bequeathed, becomes his property absolutely, and that the real estate devised, descends to the right heirs of his deceased wife. Judging from the face of the will, is it possible to believe that such was the intention of the testatrix? Can it be supposed, as is the unequivocal result of the language of the will, as interpreted by the appellant, that if *Mary Tilghman* had died, leaving a husband and children, who departed this life under the age of twenty-one and unmarried, it was the intention of the testatrix, that her whole real and personal property should become the absolute estate of the ultimate devisees, the nephews and nieces mentioned in the will; but that if the wife had thus died without children, the limitation over to the nephews and nieces was wholly inoperative and void, and the personalty became the property of the surviving husband, and

the realty descended to the right heirs of the deceased wife. For such an intention in the testatrix, the most prolific imagination would be at fault in conjuring up the semblance of a reason. Are we by the words of the will driven to the adoption of the appellant's interpretation of it? Certainly not. By construing the "and" between the word "unmarried," and those of "without leaving children," as "or," every pretence for asserting the present claim of the appellant is swept from under him. And independently of the reasons hereinbefore stated, to prove, that it never could have been the design of the testatrix, that the word "and," referred to, should be construed copulatively, we think its disjunctive signification is sufficiently demonstrated by its connection with the word "unmarried," as it appears in this will. In contemplation of law, is it not an absurdity to say, when unconnected with any other contingent event, that if a female "die unmarried and without leaving children," then property devised to her shall pass to another? How can there be children left, if the devisee never marries? The addition in such a case to the word "unmarried," and, "without leaving children," is a legal absurdity, and to give to such a clause in a will a rational interpretation, and a meaning to every word used in it, "and" should be construed disjunctively. But it is said, that by so doing, you silence the word "unmarried," and deprive it of all meaning and operation. In our opinion no such consequence would result from reading "and" as "or." The meaning and operation of the word "unmarried," would remain unchanged, and the effect of its introduction in that clause of the will would be, that if the niece died unmarried, the limitation over would take effect; and construing "and," disjunctively, if she died without leaving children, the same result woult follow; or in the next succeeding provision in the will, should she die leaving children, and such child or children die before the age of twenty-one years, or without having married previous to the attainment of such age, "then the nephews and nieces were to take the estate devised to them." By this, and by no other legitimate construction, is consistency produced in the different expressions in the will, and the general intent of the testatrix,

in the disposition of her estate, effectuated. If, in the construction of such a will, as that now before us, authorities are deemed necessary, they can be found in *Hepworth vs. Taylor*, 1 *Cox. Rep.* 112; *Maberly vs. Strode*, 3 *Ves.*, 450, and *Bell vs. Phyn*, 7 *Ves.*, 453.

But the changing of the word "and" into "or," is not the only transmutation that is to be made in the contingencies, upon which the limitation over is made to depend, to secure the full effectuation of the general intent of the testatrix, as to the disposition of her estate. The last contingency on which the limitation over is dependant, as expressed in the will, is, "should she die leaving children, and such child or children die before the age of twenty-one years, or without having married previous to the attainment of such age." If the word "or," between "years" and "without," &c., is to be construed disjunctively in its grammatical sense, the necessary consequence would be, that the limitation over would take effect if the child or children died under the age of twenty-one years, although such child or children may have married, and died under the age of twenty-one years and leaving issue; and the limitation over would, in like manner, have been effectual, if the child or children had died without having married previous to the attainment of such age, although such child or children may have lived fifty years after attaining their majority, and died leaving a numerous progeny. That such was not the intention of the testatrix, is demonstrable from the will itself, and from almost numberless decisions. How then is this incongruity, this glaring violation of the intent of the testatrix, to be prevented? By doing what has been done in numerous cases in this State, and elsewhere, construe the word "or," in the place referred to, copulatively, as if it were "and."

The will before us furnishes a strong illustration of the wisdom, justice and propriety, of the rules for the construction of last wills and testaments, inserted in this opinion, as extracts from 2 *Wms. on Ex'rs*, and the opinion of *C. J. Kent* in 6 *Johns. Rep.* The judgment of the county court is affirmed.

**JUDGMENT AFFIRMED.**