𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

EAST v. GARRETT AND WIFE.

FEBRUARY 2d, 1888.

1. WILLS—*Construction—Rules.*—Testator's intention is "the polar star" of construction. In order to effectuate such intention, which is to be collected from the whole will, words may be rejected and supplied; expressions may be rectified, as by reading the word, "and" for "or" and *vice versa;* and in no case can the manifest intent be defeated by adhering to *the letter* of the will.

2. IDEM—*Case at bar.*—Clause 5 of will reads thus: "I give to Edward P. East and his legitimate children forever, the farm I purchased of Savage, upon condition that he will pay to Eliza P. Scott, $130 annually as long as she lives, and will also pay what he owes me; but if he [*will not pay the annuity to Eliza P. Scott, and what he owes me, and*] shall die leaving no legitimate child, I then give the farm to Eliza Frances Scott and her children forever; but if she die leaving no child, I then give the farm to my nieces," &c. Edward P. East paid what he owed testator and the annuity to Eliza P. Scott up to his death, intestate, leaving personalty ample to pay the annuity during her life, but no legitimate child. B. H. East, his maternal half brother, claimed the farm as his heir at law:

HELD:

    1. In order to effectuate the testator's manifest intention, the words in italics and within brackets, may be rejected as serving no intelligent purpose; but if they were used for the purpose of emphasis, then the copulative "*and*" at the end of the italicised words must be construed as the disjunctive "*or.*"

    2. And under the will, Edward P. East took an estate tail enlarged by statute into a fee simple, which vested upon his paying the annuity and his debt to the testator, but which was defeated by his dying without leaving a legitimate child.

Error to judgment of circuit court of Accomac county, ren-

dered March 22d, 1886, in an action of ejectment wherein Benjamin H. East, the plaintiff in error, was plaintiff, and George W. Garrett and Eliza F., his wife, the defendants in error, were the defendants. The object of the action was to recover a certain tract of land in said county, mentioned in the fifth clause of the last will of Dr. Southey S. Satchell, and thereby devised to Edward P. East and his *legitimate children* forever, upon certain conditions in said fifth clause set forth.

The following is the body of the will of the testator:

"Item 1. I give to Mary C. Rew, during her lifetime, the lands which I purchased of Richard R. Drummond and George F. Wilkins. I also give to Mary C. Rew forever the following articles: one thousand dollars ($1,000) in money; my large dairy on the Drummond farm; my best milch cow and calf on the same farm; ten barrels of corn and three stacks of fodder. At the death of Mary C. Rew, I give the above-mentioned lands to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia L. Joynes, and the children of my nephew, Thomas R. Joynes, Jr., and their heirs forever.

"2. I give to Isaac Satchell (col.), during his lifetime, the whole of the farm on which I reside, lying on the west side of the road leading from Drummondtown to Locustville. I also give to Isaac Satchell forever the following articles: my cart and harness; one cow and calf; all of my farming implements; ten barrels of corn and three stacks of fodder. At the death of Isaac Satchell, I give the above-mentioned land to Eliza Frances Scott and her children forever; but if she should die leaving no child, I then give the above-mentioned land to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia L. Joynes, and the children of my nephew, Thos. R. Joynes, Jr., and their heirs forever.

"3. I give to Lucy Ewell (col.), her heirs and assigns forever, one hundred dollars.

"4. I give to Caleb Satchell (col.), his heirs and assigns forever, my small dairy on the Drummond farm; one cow and

calf on the same farm, and five hundred dollars in money, including what he owes me.

"5. I give to Edward P. East and his legitimate children forever, the farm which I purchased of Major John Savage, upon condition that he will pay to Eliza P. Scott, Sr., one hundred and thirty dollars annually as long as she lives, and will also pay what he owes me; but if he will not pay the above annuity to Eliza P. Scott, Sr., and what he owes me, and shall die leaving no legitimate child, I then give the above-mentioned farm to Eliza Frances Scott and her children forever; but if she should die leaving no child, I then give the above-mentioned farm to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thos. R. Joynes, Jr., and their heirs forever. I also give to Edward P. East forever all my overcoats, coats, vests, and pantaloons.

"6. I give, devise, and bequeath to Eliza Frances Scott and her children forever, the whole of the farm on which I reside, lying on the east side of the road leading from Drummondtown to Locustville; but if she should die leaving no child, I then give the above-mentioned part of my farm on which I reside to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thos. R. Joynes, Jr., and their heirs forever. I also give to Eliza Frances Scott and her heirs forever, all the rest and residue of my estate, not otherwise disposed of, after paying my debts."

"7. And last, I constitute and appoint my friends, John M. Fosque and Abel T. Johnson, the sole executors of this, my last will and testament.

"In testimony whereof, I have hereunto set my hand and affixed my seal this the 10th day of October, 1872.

SOUTHEY S. SATCHELL. [SEAL.]

"The above will is in my handwriting or was written by me.

SOUTHEY S. SATCHELL."

In connection with the testator's will and the due probate thereof, the following are the facts agreed:

"That the said testator, at the time of his death, was residing on his farm near Drummondtown, having retired from the practice of his profession (*i. e.*, medicine,) for a number of years; and that he lived alone, surrounded by his family servants, Isaac Satchell, Lucy Ewell, and Caleb Satchell; that the said testator never was married, but was a man of considerable estate, both real and personal—all of which he disposed of by his will and testament.

"That the said testator, at the time of his death, was seized and possessed in fee simple of the real estate devised by his last will and testament; that the tract of land devised by said will to Isaac Satchell, colored, for his life, with remainder to Eliza Frances Scott, was, at the date of said testator's death, of the value of twenty-five hundred dollars ($2,500); that the tract devised by said will to Edward P. East, was, at the date of said testator's death, of the value of twenty-five hundred dollars ($2,500); and that the tract devised by said will to Eliza Frances Scott, was, at the date of said testator's death, of the value of nine thousand dollars ($9,000); and that under the residuary clause embraced in the sixth item of said will, there was paid to said Eliza Frances Scott by said executors on or about the 6th day of March, A. D. 1876, the sum of seven thousand three hundred and fifty-six dollars and two cents ($7,356 02), the same being the balance appearing upon the audit to be due from said executors to the estate of said testator.

"That the Mary C. Rew mentioned in the first item of said will was permitted by said testator to live upon the land men-

tioned in the first item of said will, and to occupy the buildings thereon for several years before his death; that said Mary C. Rew was a spinster, whom the said testator visited frequently, but that said Mary C. Rew was not related by blood to the said testator.

"That the Isaac Satchell, Lucy Ewell, and Caleb Satchell mentioned in the second, third, and fourth items are colored people, who were formerly favorite slaves of the testator, who remained with the testator after their emancipation up to the date of his death, and that for those servants, and particularly the first named, the testator had great regard and affection.

"That the devisee, Edward P. East, mentioned in the fifth item of said will, was the natural son of the said testator, and was so regarded and acknowledged by said testator, and recognized by the community; and that the real estate, to recover which this action is brought, is all the land owned by said testator at the date of his death, which he purchased of Major John Savage; that the said Edward P. East, at the date of said will and the death of said testator, was living on said testator's land, which he devised to said Isaac Satchell, with a colored woman as his mistress, and that by said colored woman he had, at the date of said will, at least two children, which were recognized by the community and by said East as his children; and that said Edward P. East owned at the said date, no other estate known or visible than the stock upon said farm and the necessary farming implements and some little household and kitchen property.

"That the devisee, Eliza Frances Scott, mentioned in the fifth and sixth items of said will, is now the defendant, Eliza F. C. Garrett, and that she intermarried with the defendant, George W. Garrett, on the 23d day of August, A. D. 1877; that the said Eliza F. C. Garrett is the natural daughter of the said testator, was so regarded and acknowledged by the said testator and recognized by the community; that the said testator had great regard and consideration for his said daughter and

expended his money and means in her education, maintenance, and support, and also in the support and maintenance of her mother, Eliza P. Scott, Sr.; that the said Eliza P. Scott, Sr., is the annuitant mentioned in the fifth item of said will, and, as above stated, the mother of the said Eliza F. C. Garrett, and was and is a spinster, whom the said testator visited frequently. The said Eliza P. Scott, Sr., had no estate, real or personal, at the date of said testator's will, or at his death.

"That the mother of the said devisee, Edward P. East, was Ailsie East, who died several years before the said testator's death; that at the date of the death of said testator, the said Edward P. East was thirty-one years of age, the said Eliza Frances Scott was twenty-five years of age, the said Eliza P. Scott, Sr., was sixty-five years of age, and the said Isaac Satchell, colored, was seventy-two years of age.

"That upon the death of said testator, the devisees aforesaid took possession of the tracts of land devised to them, respectively; that the said Edward P. East held continuous possession of the tract devised to him until his death, which occurred on the 30th day of March, A. D. 1885; and that the said Eliza Frances Scott and the said Isaac Satchell, colored, have held continuous possession of the tracts devised to them respectively, and still hold possession thereof.

"That the administrator of said Edward P. East, shortly after his death, rented out the tract of land devised as aforesaid to said Edward P. East, for the balance of the year 1885; that the said Eliza F. C. Garrett, who holds all her property as her sole and separate estate, rented the said tract of land for the balance of the year 1885, and sub-rented it to the original defendant to this action, Cornelius S. Watkinson, for said balance of said year 1885; that the said Eliza F. C. Garrett, claiming that under the said last will and testament, upon the death of said Edward P. East, the said tract of land so devised to him passed to her, and that she would be entitled to possession of the same as devisee on the 1st day of January, A. D.

1886, rented the said tract of land to the said Cornelius S. Watkinson for the year 1886; and that the said Cornelius S. Watkinson was the actual occupant of said tract of land at the time of the institution of this action.

"That at the date of the death of said testator, the said Edward P. East's indebtedness to him was evidenced by two bonds, which, on the 10th day of January, A. D. 1874, the said Edward P. East paid to the executors aforesaid, amounting, principal and interest, to the sum of four hundred and six dollars and sixty-two cents, ($406 62); that the said Edward P. East, during his lifetime, paid to the said Eliza P. Scott, Sr., the annuity which, by the said fifth item of said last will and testament, he was required to pay to her; and that his administrator has, since his death, paid to her the said annuity up to the 1st day of January, A. D. 1886, when the same fell due; and that the personal estate of the said Edward P. East, deceased, is more than sufficient to meet and pay the said annuity during the life of the said Eliza P. Scott, Sr.; that the said Edward P. East died intestate, and never was married; that Benjamin H. East, the plaintiff in this action, is the half brother of the said Edward P. East, having the same mother, but a different father, and was, at the time of the death of said Edward P. East, and now is, the said Edward P. East's sole heir at law; that the said testator never had anything to do with the said plaintiff, and furnished nothing for his maintenance and support, he, the said plaintiff, having left the county of Accomac when a boy, and never having returned until long after the death of the testator, Southey S. Satchell, and until after the death of his said half brother, Edward P. East.

"And it was further agreed between the parties that the foregoing statement of facts should be a part of the record in this case, but not to be considered as a technical case agreed.

The action was originally brought by the plaintiff, Benjamin H. East, against the defendant, Cornelius S. Watkinson,

who was the tenant of the defendant, Eliza F. C. Garrett, the wife of the defendant, George W. Garrett.

The declaration and notice having been served upon said tenant as required by statute, subsequently, to-wit: at the February term, 1886, of said circuit court, George W. Garrett and Eliza F. C. Garrett, his wife, appeared, and, on their motion, were made defendants in the place of the said lessee, Cornelius S. Watkinson, and having so been made defendants they pleaded not guilty, upon which plea issue was joined; and neither party demanding a jury, the whole case was submitted for determination to the judgment of the court. And upon consideration, the court gave judgment for the defendants; whereupon the plaintiff moved the court to set aside its said judgment and enter judgment for the plaintiff, or to award the plaintiff a new trial, on the ground that said judgment "is contrary to the law and the evidence"; but the court refused said motion; and the plaintiff excepted, and upon his application a writ of error to said judgment was awarded.

*Neely & Quinby*, for the plaintiff in error.

*Gunter & Blackstone*, and *George T. Garrison*, for the defendants in error.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

This case turns upon the proper construction to be given to the fifth item of the last will and testament of Dr. Southey S. Satchell, late of Accomac. That item of the testator's will is for convenience here reproduced:

"5th. I give to Edward P. East and his legitimate children forever, the farm which I purchased of Major John Savage, upon condition that he will pay to Eliza P. Scott, Sr., one

hundred and thirty dollars annually as long as she lives, and will also pay me what he owes me; but if he will not pay the above annuity to Eliza P. Scott, Sr., and what he owes me, and shall die leaving no legitimate child, I then give the above mentioned farm to Eliza Frances Scott and her children forever; but if she should die leaving no child, I then give the above mentioned farm to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thomas R. Joynes, Jr., and their heirs forever. I also give to Edward P. East forever, all my overcoats, coats, vests, and pantaloons."

The devisee, Edward P. East, was, it seems, a robust young man of thirty-one years of age at the date of the testator's death. He was the natural son of the testator by Ailsie East who predeceased the testator by several years. The annuitant, Eliza P. Scott, Sr., was, at the date of the testator's death, sixty-five years of age. Eliza Frances Scott, who is the defendant, Eliza F. C. Garrett, is the natural daughter of the testator, Southey S. Satchell, by said annuitant, Eliza P. Scott, Sr., and she was, at the date of testator's death, twenty-five years of age. It is a conceded fact that the testator had great regard and consideration for his said daughter, and expended his money and means in her education, maintenance, and support, and also in the support and maintenance of her mother, Eliza P. Scott, Sr. Upon the death of the testator, the several devisees took possession of the lands devised to them respectively; and the said Edward P. East held continuous possession of the tract devised to him until his death, which resulted from accident on the 30th of March, 1885. He died intestate, never having been married, and, of course, left no legitimate child or children; and having met an untimely death, he left surviving him the said annuitant who was greatly his senior—an event that could not have been anticipated by the testator.

Edward P. East accepted under the will, paid the debt due

by him to the testator, took possession of the land devised to him, and, during his lifetime, paid to Eliza P. Scott, Sr., the annuity which, by the fifth item of the testator's will, he was required to pay to her, and his administrator, after his death, paid said annuity up to the 1st of January, 1886.

Benjamin H. East, the plaintiff below, and the plaintiff in error here, is the half brother of the said Edward P. East, having the same mother, but by a different father, and who, at the death of Edward P. East, was, and now is the sole heir at law of the latter; and as such, he claims the land in controversy.

On behalf of the plaintiff in error, it is insisted that under the fifth item of the testator's will, Edward P. East took, upon the payment of the debt due the testator, an estate tail, enlarged by our statute into a fee simple; which estate, after having vested, as alleged, upon the performance of the condition precedent aforesaid, was liable to be divested only by the concurrence of the two events alleged to be conditions subsequent: 1st, The failure of Edward P. East to pay the annuity to Eliza P. Scott, Sr.; and 2d, The death of Edward P. East without leaving any legitimate child or children. And thus it is contended that the sole question for decision is whether the estate, so alleged to have vested, was liable to be defeated by the happening of either one of these events, or whether, in order to defeat the estate, both events must happen.

The case is very fully and ably argued for the plaintiff in error in the petition, where it is said, "the words, 'and his legitimate children forever,' would not, perhaps, have been sufficient to create this estate if used in a deed; but they are quite sufficient in a will, 'wherein greater indulgence is allowed'; for in a will 'an estate tail may be created by a devise to a man and his seed, or to a man and his heirs male; or by other irregular mode of expression,' citing 1 Tuck. Com. Book 2, p. 47. Or it may be created by a devise 'to a man and his children, if he has no children at the time of the

devise—or to a man and his posterity, or by any other words which show an intention to restrain the inheritance to the descendants of the devisee.'" Citing 1 Black. Com. Book 2, p. 115 (marg.) note 20; 2 Minor's Inst., 968, and cases cited.

Doubtless the law is thus correctly stated; but it is obvious that the doctrine last above cited to the effect that an estate tail may be created by any "words which show an intention to restrain the inheritance to the descendants of the devisee," by no means tends to uphold the contention of the plaintiff in error; for not only is there no mention in the will of any person, or class of persons, that could embrace the plaintiff in error, but, on the contrary, the manifest and clearly expressed intention of the testator, as evinced, both in the immediate context and in the general scheme of the will, is that the estate should not vest absolutely except in the event of the death of Edward P. East leaving legitimate children, thereby clearly restraining the inheritance to the descendants of the devisee; failing which, the estate goes over to the testator's natural daughter, Eliza Frances Scott, and her *children* forever, but upon the further contingency that, if Eliza Frances Scott should die leaving no child, then over "to my nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thos. R. Joynes, Jr., and their heirs forever"; thus making these blood relations the ulterior devisees in fee, upon the happening of the two events specified—first, the death of Edward P. East without leaving any *legitimate* child; and, second, the death of Eliza Frances Scott leaving *no child.*

On behalf the plaintiff in error, it is claimed, and it was so held by the court below, that of the three conditions annexed to the devise in question, only one of them, to-wit, the payment of the debt due to the testator, is a condition precedent, and that the other two, namely, the payment of the annuity by Edward P. East, and the event of his death leaving no *legitimate* child, are conditions subsequent, and that both of these events must concur before the limitation over to Eliza Frances

Scott can take effect. And the circuit court held with the plaintiff, as to the character of the conditions named; but, at the same time, held that each and all of the conditions must be performed; or, to state it differently, that upon the happening of either one of the events specified, the estate devised, on condition, to Edward P. East failed, and the limitation over took effect, and that this result necessarily followed when Edward P. East died leaving no *legitimate* child.

Though it is not necessary to a proper decision of this case, let it be conceded for the sake of the argument, that the payment of the debt due to the testator was the only condition precedent, and that on the performance thereof the estate created vested in Edward P. East; yet it must be remembered that the estate so created and vested was not an absolute estate, but an estate on condition. This is so obviously true, that any contention to the contrary necessarily involves the absurdity of utterly disregarding the plainly expressed words of condition which immediately follow the words creating and devising the estate.

It is insisted that, inasmuch as the estate vested in Edward P. East on the performance by him of the condition precedent, *i. e.*, the payment of the debt due by him to the testator, then *both* of the conditions subsequent must happen; and, in argument, the question is asked: " Shall the language (of the will) be varied in order to *defeat* a *vested estate?* Or shall it be construed naturally, not to say *strictly*, to prevent such a result?"

The *natural* construction insisted on by counsel, refers to the language introducing the limitation over to Eliza Frances Scott, which is as follows: "but if he will not pay the above annuity to Eliza P. Scott, Sr., and what he owes me, and shall die leaving no legitimate child, I then give," &c., &c.

The court below holding that each of the conditions expressed must be performed, also held that, as Edward P. East died without leaving any *legitimate* child, one of the very events had happened which, according to the manifest intention of the

testator, defeated the previous estate on condition, and caused
the limitation over to take effect. This ruling of the circuit
court was the result of substituting the disjunctive word "or"
for the copulative word "and," where the latter word occurs
in the language above quoted; the effect of which is to make
the limitation over read "but if he will not pay the above
annuity to Eliza P. Scott, Sr., *or* what he owes me, *or* shall die
leaving no legitimate child, I then give the above mentioned
farm to Eliza Frances Scott and her children forever," &c., &c.

But it is insisted that this construction is unwarranted by
anything contained in the will, is subversive of the established
rules of construction, and is opposed to the great majority of
adjudged cases in which similar language has been construed.
In other words it is contended that the words in question must
be taken in their natural grammatical sense, and that when so
taken and read, the limitation over is dependent upon the con-
currence of all the events specified.

In support of this view, numerous authorities are cited by
counsel for the plaintiff in error, prominent among which are
the following: *Jenkins* v. *Van Schack*, 3 Paige, 242; *Gray* v.
*Pearson*, 6 H. L. Cas., 105–6; *Doe ex Dem.*, *Usher* v. *Jessup*,
12 East, 228; *Day* v. *Day*, 1 Kay., 703; *Cook* v. *Misehouse*, 34
Beav., 27; *Janney* v. *Spragg*, 7 Gill, 197, reported also in 48
Am. Decis., 557; Redfield on Wills, 473–4, and note 6; 3
Lomax Dig. (marg.) 125–7, and cases cited; and *Brewer* v.
*Opie*, 1 Call, 212.

But before examining these authorities, let us refer briefly
to some of the general principles in regard to the construction
of wills; and especially to such as respect the words "or" and
"and" here under consideration.

Counsel for the plaintiff in error, quoting from *Gray* v. *Pear-
son, supra,* state the rule thus: "In construing wills and all
written instruments, the grammatical and *ordinary* sense of the
words is to be adhered to unless that would lead to some
absurdity or some repugnance or inconsistency with the rest of

the instrument, in which case the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, but *no further*."

In 2d Wms. Ex., 715, the author in giving the general rules for the construction of wills, states "that the will must be most favorably and benignly expounded to pursue, if possible, the intention of the testator. To effectuate, therefore, the clear intention, as apparent upon the whole will, words and limitations may be transposed, supplied, or rejected. So, in order to advance the apparent intention of the testator, 'or' may be construed 'and' and *vice versa*, in cases of legacies as well as devises of real estate. So, 'if' may be construed 'when' for the same purpose." See opinion of Dorsey, C. J., in *Janney* v. *Spragg, supra,* a case relied on by counsel for the plaintiff in error. And in *Jackson* v. *Blansham,* 6 Johns., 54, Kent, C. J., after a careful examination of all the authorities upon the subject, quotes with approbation the rule, "that in deeds and wills, the words 'or' and 'and' are not to be always held to a strict grammatical sense, but 'or' is to be taken for 'and,' and 'and' is to be taken for 'or,' as may best comport with the intent and meaning of the grant or devise."

Now, as to the authorities cited and relied on by counsel for the plaintiff in error, there is not to be found in any of them a single utterance which can be said to be opposed to the principles above laid down. In many cases as well those referred to as others, words have been rejected or supplied, and in many others, "or" has been taken as "and," and *vice versa,* but always with the avowed purpose of carrying into effect the intention of the testator as collected from the whole will, and in pursuing this cardinal principle of construction, it is almost universally admitted that established rules of construction, however wise and just, can at best only serve as aids to a just conclusion. Such is the rule, especially when construing plain words and expressions in common use, which have not acquired a definite legal signification. Hence, in the old case

of *Jeffereys* v. *Poyntz*, 3d Wils., 141, it was said: "Cases in the books upon *wills* may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect directly in point, and agree in every circumstance with *that* in question, it will have little or no weight with the court, who always look upon the intention of the testator as the pole star directing them in the construction of wills." This language was substantially quoted, and with approbation, by Pendleton, P., in. *Kennon* v. *McRoberts*, 1 Wash., 97. And in *Eden* v. *Wilson*, 4 H. L. Cas., 284, Lord St. Leonards said: "If the most illiterate person makes his own will, though there is not a word of correct grammar in it, yet if you can collect the intention you are bound to give legal effect to it." In the case at bar the manifest intention is easily collected from the whole will, and the circuit court has simply collected that intent and given effect to it.

In the recent case of *Stokes* v. *Van Wych*, 83 Va., 724, this court said: "In construing wills, it is universally admitted that the intention of the testator must be sought after as the 'pole star,' and, when found, must be followed as the 'sovereign guide,' and that intention must be looked for and found in the will itself. But it must be borne in mind, however, that the true inquiry is not what the testator meant to express, but what the words used by him do express. And it must also be remembered that though the testator's intention, when ascertained, is implicitly obeyed, however informal the language in which it is conveyed, yet the courts, in construing that language, always resort to certain established rules—rules deeply embedded in the law—by which particular words and expressions, standing unexplained, have acquired a definite legal signification, which does not always comport with their popular acceptation." Citing *Burks* v. *Lee*, 76 Va., 389, and 3 Jarman on Wills, top pp. 669–70.

Now, in the light of these principles, the inquiry is, does the testator make manifest his intention by what he has said in

his will? The easy and true answer is, that, whether we look alone to the words to be construed, in the light of the immediate context, or to those in connection with other parts of the will, the intention is clear beyond all question. This being so, and the intention thus collected not being in contravention of any legal principle, our simple duty is to give legal effect to that intention.

The evident general intention of the testator, and that which is substantially, if not expressly stated in each and every clause disposing of real estate, is that his immediate family relatives, his nieces, Mrs. Mary Scarburgh, Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of his nephew, Thomas R. Joynes, Jr., are the ultimate objects of his bounty, subject only to the preceding life estate as to the land devised by the first clause; and, as to the lands devised by the second, fifth, and sixth clauses, the same nieces, and the children of his nephew, named in the first clause, are made the ulterior objects of his bounty, subject to the contingencies expressed in these clauses respectively, or, to state it differently, the general intention is evinced by these prominent features, which pervade the whole will: 1st. The testator's plain intention to dispose of his whole estate; 2d. His equally clear description of the persons to take; and when conditions are annexed to the devises, respectively, the careful, though inartificial, manner of stating such conditions; 5th. The manifest intention that the persons, or classes of persons, named or described by the testator, and none other, should share his bounty, so far as he by law was permitted to provide.

Hence, by the first clause of his will, the testator gives certain lands to Mary C. Rew; remainder to his said nieces, and the children of his said nephew, and their heirs forever. Observe here there is no condition, limitation or restriction whatever. After carving out the previous life estate, the absolute fee is given, and to persons or classes of persons carefully designated and described.

By the second clause, the testator gives to his aged and faithful servant, Isaac Satchell, that part of the farm on which he, the testator, lived, lying on the west side of the road described; and at the death of said life tenant, to his said natural daughter and her children forever; "but if she should die leaving no child," then over to the testator's nieces, and the children of his nephew mentioned in the first clause. Here, though providing for his natural daughter to whom he was deeply attached, and who, upon the face of the will, was evidently the chief object of his bounty, it appearing in evidence that what she got absolutely as residuary legatee, together with the limitations over in her favor in the event of leaving at her death a child or children, is in amount or value the great bulk of the estate; yet the testator was careful, even in dealing with this obvious favorite of his, to prescribe a limitation over to his said blood relations in the event his said natural daughter should die leaving *no child*.

By the third and fourth clauses, the testator bequeaths to his two old servants, Lucy Ewell and Caleb Satchell, respectively, certain amounts in personalty. But, passing over the said third and fourth clauses as not necessarily involved in the matter of construction in hand, it need only be remarked that it is perfectly clear by the concurrent testimony of every other clause in the will, that the testator's general intention was as stated above. Observe too, the logical consistency of thought and expression by which the testator makes it manifest that his special intention was to make his said natural daughter the chief object of his bounty; for in perfect accord with the aforesaid general intention, he gives the land, devised by the second clause, to her and "her children forever"—that is, after the preceding life estate to Isaac Satchell; but in the event she should die leaving no child, then over to the testator's said nieces, and the children of his said nephew, without any limitation or restriction whatever.

Now, for the present passing by the fifth clause, the one in

question, we find that the testator, by the sixth clause, gives to his said natural daughter, Eliza Frances Scott, and her children forever, "the whole of the farm on which I reside, lying on the east side of the road leading from Drummondtown to Locustville; but if she should die leaving no child, I then give the above-mentioned part of my farm on which I reside to my nieces," &c., naming them—they being the same persons mentioned in the first, second, and fifth clauses. Thus the lands mentioned in the second and sixth clauses, which together constituted the farm on which the testator lived, were intended to come together as the property of Eliza Frances Scott and her children forever; but, be it observed, with a clear and explicit limitation over in the event Eliza Frances Scott should die leaving no child. Eliza Frances Scott had no children either at the date of the will or at the testator's death—hence it is obvious that the estate given by the words "to Eliza Frances Scott and her children forever," is defeasible in the event of her death "not leaving a child"; in which event the limitation over to the testator's said blood relations must take effect, because it is so expressly provided in plain words. So far everything is plain, both as to the general and the special intent.

We come, however, to the fifth clause in which the testator does not so clearly express himself as in other clauses; or in which it may be said the testator is guilty of needless, if not senseless, repetition out of which has grown all the trouble. The testator says: "5th. I give to Edward P. East and his *legitimate* children forever, the farm which I purchased of Major John Savage, upon condition that he will pay to Eliza P. Scott Sr., one hundred and thirty dollars annually as long as she lives, and will also pay what he owes me; but if he will not pay the above annuity to Eliza P. Scott, Sr., and what he owes me, and shall die leaving no legitimate child, I then give the above-mentioned farm to Eliza Frances Scott and her children forever; but if she should die leaving no child, I then give the

above-mentioned farm to my nieces, Mrs. Mary Scarburgh, Mrs Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thos. R. Joynes, Jr., and their heirs forever. I also give to Edward P. East all my overcoats, coats, vests, and pantaloons."

The trouble arises mainly, if not entirely, out of the useless, if not senseless repetition involved in the use of the words "will not pay the above annuity to Eliza P. Scott, Sr., and what he owes me, and," between the words "but if he," where they first occur, and the words "shall die leaving no legitimate child," &c. Obviously, these words serve no intelligent purpose, and they must have been inadvertently used; for the preceding words, "upon condition that he will pay to Eliza P. · Scott, Sr., one hundred and thirty dollars annually as long as she lives, and will also pay what he owes me," fully express, so far as they go, the conditions annexed to the gift, and by necessary implication they fully and clearly express the idea that if the conditions be not performed, the estate will not pass. The result is, that by the use of these words, the word "and" without necessity and without sense, is twice needlessly introduced and obviously each time only serving to obscure the testator's meaning plainly collectable from the whole context. Then these words should be rejected, not only as surplusage, but as words that can serve no other purpose than to confuse and obscure the meaning intended to be expressed, as clearly appears from the context. Without these words, the clause will read: "5th. I give to Edward P. East and his legitimate children forever, the farm which I purchased from Major John Savage, upon condition that he will pay to Eliza P. Scott, Sr., one hundred and thirty dollars annually as long as she lives, and will also pay what he owes me; but if he shall die leaving no legitimate child, I then give the above mentioned farm to Eliza Frances Scott and her children forever; but if she should die leaving no child, I then give the above mentioned farm to my nieces, Mrs. Mary Scarburgh,

Mrs. Sarah Duffield, Miss Virginia S. Joynes, and the children of my nephew, Thomas R. Joynes, Jr., and their heirs forever." So read without the useless words that only serve to becloud the manifest intention as gathered from other parts of the will, the words introducing the limitation over in the event of the death of Edward P. East without leaving legitimate children, are "but if he shall die leaving no legitimate child;" and is, if not precisely, substantially in the same language employed to introduce similar limitations over in the event of the death of Eliza Francis Scott without children, the language as to her in each case being "but if she should die leaving no child" thus bringing the language employed in introducing the limitation over in the event of the death of Edward P. East, leaving no legitimate child, into entire harmony with that employed in the second, fifth, and sixth clauses introducing similar limitations over in the event of the death of Eliza Frances Scott leaving no child, and into like harmony with the manifest general intention of the testator that his said nieces, and the children of his said nephew should, upon the happening of the events specified, ultimately own and enjoy all his real estate.

The above construction, by which certain words in the fifth clause are rejected as utterly useless and meaningless, is not necessarily in conflict with the construction given by the circuit court; for whilst the words rejected are useless, they may possibly have been used by the testator to emphasize the negative pregnant necessarily carried by the preceding words annexing conditions to the devise. And it is probable that the circuit court took that view, and in doing so found no difficulty in construing the word "and" twice unnecessarily introduced, as "or," it being manifest from the whole context that the intention was to defeat the estate given on condition, if Edward P. East should fail to pay the annuity, or fail to pay the debt due the testator, or should die leaving no legitimate child.

Why, and for what conceivable reason, should the testator

so carefully limit over in each case the estate in the land devised to his natural daughter in the event she should die leaving no child, if a similar limitation over in respect of the land devised to Edward P. East, his natural son, is to go for naught? If the testator had said such was his purpose, and had said it in plain and unambiguous terms, that would have sufficed, and would preclude all mere conjecture upon the subject. He, however, does not say so, but quite the contrary, if we are to heed his real meaning as collected from the whole will.

It surely cannot be contended that the devise to Edward P. East and his *legitimate children* created a greater estate than the similar devises to Eliza Frances Scott and her children; nor can any natural reason be assigned why, in the former case, Edward P. East, hedged around by these conditions, should take an absolute estate upon the performance of only one of them, when one only of such conditions, if not performed, shall be sufficient to defeat the estate devised to Eliza Frances Scott and her children. Nor can it be consistently argued, in the light of the circumstances which surrounded the testator when he wrote his will, that there is not a deep significance in the words *legitimate children* employed in the devise to Edward P. East, as compared with the simple word *children* employed in each of the devises to Eliza Frances Scott.

In attempting to repel the view taken by the judge of the circuit court in his opinion, which is part of the record, it is insisted in the petition for writ of error that the fact that Edward P. East "was living in open shame with a negro mistress" by whom he had, at the date of the will, at least two *illegitimate* children, did not conduce, considering the very promiscuous life led by the testator himself, to a less degree of regard by the latter for Edward P. East than was entertained for his natural daughter, Eliza Frances Scott.

It is true that the testator seems to have been quite irregular in his life, and was the father only of children born out of

wedlock; but it is also true that his children, though unlaw-
fully begotten, were born of women of his own race. Edward
P. East, in whose veins the blood of the testator ran, seems to
have been less fastidious in his tastes, and to have preferred
illicit life, open shame, and to be the father of illegitimate
children by a negro mistress. To say that such a course of
life was not offensive to the testator, his own sins to the con-
trary, notwithstanding, is to falsify all experience and to fix
upon the white race a stigma not deserved by the great ma-
jority of that race. It is, then, in view of the evidence, in
view of the greater affection felt by the testator for his natural
daughter, and in view of the great preference shown for her
over Edward P. East upon the face of the will, but natural to
conclude that in using the words *legitimate children* in connec-
tion with the devise to the one and only the word children in
connection with the other, the testator intended to emphasize
his disapprobation of the course of Edward P. East, and to
annex, as he did, a further condition that the estate given
should not vest absolutely except in the event of his death
leaving a legitimate child or children.

In opposition to these views, which speak out in the circum-
stances which surrounded the testator, and which assert them-
selves unmistakably in almost every feature of the will, it is
insisted that the word "and" where it occurs as aforesaid,
must be taken in its natural grammatical sense; that Edward
P. East having paid the debt due the testator, the estate vested
in him, and that the other two conditions must concur to
divest the estate so previously vested.

Counsel for the plaintiff in error are unquestionably right
in quoting from *Gray* v. *Pearson*, 6 H. L. Cas., 105, the rule as
follows: "In construing wills and all written instruments, the
grammatical and *ordinary* sense of the words is to be adhered
to unless that would lead to some absurdity or some repug-
nance or inconsistency with the rest of the instrument, in
which case the grammatical and ordinary sense of the words

may be modified, so as to avoid that absurdity and inconsistency, *but no further.*" This is the rule which we have adhered to in the construction above given. What could be more absurd, looking to the whole will, or what more incongruous than to give to the words in question the construction contended for? Or what could stand more flatly opposed to the manifest testatorial intent?

The counsel for the plaintiff in error quote the remark of Lord Alvanly in *Harrison* v. *Foreman*, 5 Vesy, 209, which is: "When there are clear words of gift creating a vested interest, the court will never permit the *absolute* gift to be defeated, unless it be perfectly *clear* that the *very* case has happened in which it is declared that the interest shall not arise." This quotation exposes the vice which lies at the very root of the whole contention, and is but the bare assumption that on the payment of the debt due the testator the estate devised vested *absolutely* in Edward P. East; or, in other words, that it vested and could not be divested except upon the concurrence in the breach of the other two conditions—a conclusion that can only be reached by utterly ignoring not only the express terms in which the conditions are annexed to the gift, but by disregarding also the whole context. Many other authorities to the same effect, are referred to, but they either do not apply to the case in hand or are not at variance with the rule laid down in *Gray* v. *Pearson*, *supra*, a rule universally admitted, and the rule which has been our guide in the present case.

After referring to a large number of authorities, the contention for the plaintiff in error culminates in the citation of *Brewer* v. *Opie*, 1 Call, 212, which it is claimed makes the insistence so plain that its discussion is rendered superfluous in Virginia. The case of *Brewer* v. *Opie* makes nothing plain except that the construction we have given in this case is warranted by the circumstances. That case only decides the simple proposition stated in 1 Jarman, 506, and which has been long settled, that a devise of real estate to A and his heirs, or,

which would be the same in effect, to A indefinitely, and in case of his death under twenty-one, *or* without issue, over, the word "or" is construed "and," and consequently, the estate does not go over to the ulterior devisee, unless both the specified events happen. And Mr. Jarman states the sum of the reasons for the rule to be that the change of "*or*" into "*and*" in such case substitutes a reasonable for a most unreasonable scheme of disposition. But this in no wise upholds the plaintiff's contention, the rule being, as already stated, that "or" will be changed into "and," and "and" into "or" as will best comport with the testator's intention, when that can be collected from the context. The contention for the plaintiff in error amounts in effect to the assertion of the proposition that the rule above stated lends no aid to a construction favorable to a limitation over, yet the case of *Janney* v. *Sprigg,* 7 Gill. (Md.) is confidently relied on. The same contention was made in that case, a very leading one, but in delivering the opinion in that case, Dorsey, C. J., said: "Unanimous decisions have been adduced to show that when a testator has devised property in fee with a limitation over, in case of the death of the first devisee 'under twenty-one or without issue,' or of his dying 'under twenty-one, unmarried or without issue,' the word 'or' is to be interpreted as if it were 'and.' The principle thus asserted is now so well established, that it is unnecessary to enumerate the cases on which it depends, or in that respect to make any comment upon them. The conversion of 'or' into 'and,' or of 'and' into 'or,' say the appellant's counsel, is never to be made in the construction of last wills and testaments, unless it be for the benefit of the first devisee or his issue, and is not to be allowed in any case for the benefit of the ulterior devisee. For this broadly asserted proposition, so materially qualifying or changing the general rule, heretofore so universally recognized upon the subject, no decision of any court, or even *dictum* of a judge, has been produced."

There is nothing to be found in this case to aid the claim of the plaintiff in error, but on the contrary, it is a strong case against him; and in it many cases are cited fully sustaining the view we take in the present case. The case here turns upon the propriety of changing "and" into "or." The necessity of making the change is rendered apparent by the intention of the testator as collected from the whole will, and we unhesitatingly make the change. Not to do so would be in effect to permit the whole scheme of disposition to be defeated, and this in behalf of a stranger, one of whom the testator knew but little and cared less, and one who is alien to every sentiment expressed in the will or in the evidence.

The judgment of the circuit court is eminently correct and must be affirmed.

JUDGMENT AFFIRMED.